UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SPOVERLOOK, LLC,  Case No. 15-13018 t11

Debtor.

## **MEMORANDUM OPINION**

Before the Court is a stay relief motion filed by a homeowners' association, brought so the association can enforce a state court settlement agreement and require the Debtor to convey certain property to it. The Debtor opposes the motion, arguing that the settlement agreement is ambiguous and that the Debtor never agreed to convey a particular parcel to the association. The argument had been rejected by the state court before the bankruptcy case was filed. The Court held a final, evidentiary hearing on the stay relief motion and took it under advisement. Thereafter, the Debtor filed a motion to reject the settlement agreement. The Court will deny the stay relief motion, but may take up any renewed request for stay relief after ruling on the motion to reject settlement agreement.

I. FACTS

The Court finds the following facts:

1. Debtor is a limited liability company. It is the developer of a 259.6 acre residential development called San Pedro Overlook, in the "East Mountains" area northeast of Albuquerque (the "Subdivision").

2. On August 21, 2002, the Debtor recorded in Sandoval County a Declaration of Covenants, Conditions, Restriction and Easement for San Pedro Overlook, recorded as Volume 405 (the "Declaration"), which binds the real property comprising the Subdivision (the

"Property"). Under the Declaration, the debtor is obligated to convey certain "common areas" to the San Pedro Overlook Community Association (the "HOA") after all of the lots in the Subdivision have been sold.

3. On October 10, 2002, the Debtor recorded a Disclosure Statement for the subdivision.

4. The Declaration and Disclosure Statement concern not only the Property but also an adjacent 267-acre parcel of land, held for future development (the "Additional Property").

5. On December 7, 2002, the Debtor recorded a first amendment to the Declaration (the "First Amendment"). Among other changes, the First Amendment purported to remove a certain 20-acre parcel of land (known as "Tract D") from the Additional Property. This was a mistake; Tract D is part of the Property, not the Additional Property. It seems likely the Debtor wished to remove Tract D from the Property, and therefore from the subdivision and the restrictions of the Declaration. If so, the attempt failed. Tract D remains part of the subdivision and the Property, and remains bound by the Declaration.

6. On July 25, 2014, the HOA filed an action against the Debtor in New Mexico's Thirteenth Judicial District Court, styled *San Pedro Overlook Community Association v. SP Overlook, LLC*, *cause no.* D-1329-CV-2014-01119, seeking to compel the debtor to convey the Subdivision's common areas to the HOA.

7. On March 30, 2015, the HOA and the debtor entered into a settlement agreement, pursuant to which they thought they had resolved their differences. It turned out, however, that a dispute remained concerning Tract D. The HOA contends that the settlement agreement obligates Debtor to convey Tract D to the HOA, while Debtor believes that the settlement agreement is ambiguous and should not be interpreted to require conveyance of Tract D.

8. Paragraph 2 of the settlement agreement (entitled "Conveyance of Commons Areas") states that "within thirty (30) days of the effective date of this Agreement, SPO shall execute and deliver to the Association a special warranty deed by which SPO shall convey to the Association the Common Areas, as defined in the [Declaration]."

9. The Declaration defines "Common Areas" as:

> all real property including easements (and the improvements or amenities thereon) which may from time to time be *owned by the [HOA]* expressly for the common use and enjoyment of the Owners. The Common Areas include, but are not limited to*, the Private Roads*. Any real property, and improvements or amenities thereon, which are *described as "common areas" in a Supplemental Declaration or a Plat* shall be deemed to be "Common Areas" as that terms is defined herein for the common use and enjoyment of the Owners, as may be provided, and shall, for all purposes, be integrated into and deemed to be a part of the Common Areas subject to this Declaration. Common Areas may be abandoned as provided in Section 13.13. (italics added).

10. Elsewhere in the Declaration are provisions pursuant to which the Debtor may transfer Common Areas to the HOA, but those provisions do not identify what, if any, property must be transferred.

11. Debtor's president testified that Tract D does not come within the definition of common area, was never considered a common area, and is not, and is not a common area.

12. The last sentence of paragraph 2 of the settlement agreement states: "The parties agree that the real property described in Exhibit A to this Agreement constitutes the Common Areas to be conveyed subject to "easement, restrictions and matters of record and taxes for the year 2005 and thereafter." The legal description in Exhibit A includes all of the Property except the residential lots. It therefore includes, inter alia, Tract D.

13. Because the first sentence of paragraph two apparently does not include Tract D, while the last sentence clearly includes it, Debtor asserts the settlement agreement is ambiguous.

14. At some point after signing the settlement agreement, Debtor realized that the HOA

expected to receive Tract D. Because that was not its understanding of the deal, Debtor offered the specified real property except for Tract D. The HOA insisted that Tract D be included. Because the parties were at loggerheads, Debtor did not deliver the special warranty deed as required by the settlement agreement.

15. On July 22, 2015, the HOA filed a motion to enforce the settlement agreement.[1] Debtor responded, and the HOA filed a reply. A number of exhibits were attached to the court filings.

16. The state court held a hearing on the motion on October 27, 2015. The court reviewed the motion, response, reply, and the attached exhibits. The hearing lasted about 30 minutes.

17. Debtor argued at the hearing that the settlement agreement is ambiguous. Debtor relied on, inter alia, the First Amendment to show that Tract D is not a common area.

18. In response, the HOA's counsel argued that no error had occurred in drafting the settlement agreement, and that the parties clearly agreed to the conveyance of all of the Property except for the residential lots. HOA's counsel also argued that allowing Debtor to retain Tract D would be contrary to the Disclosure Statement.

19. At the end of the hearing, the state court found that there was no ambiguity in the settlement agreement and ordered Debtor to convey all the real property described in Exhibit A to the settlement agreement, including Tract D. The court ordered the parties to prepare a form of order reflecting its decision.

20. By November 3, 2015, the Debtor had not conveyed the property as ordered, nor

---

[1] The settlement agreement provides that disputes arising under it shall be resolved by the state court.

had it agreed to a form of order.

21.     On November 13, 2015, SPOCA filed a motion for an order to show cause why Debtor should not be held in contempt of court for refusing to comply with the court's ruling. On November 18, 2015, the state court issued an order to show cause. A presentment hearing on the form of order was also set with the show cause hearing.

22.     On November 18, 2016, before the show cause order was entered, Debtor filed this bankruptcy case.

23.     The HOA filed a motion for relief from stay on December 31, 2015. The Court held a final hearing on the motion on March 24, 2016.[2] The hearing took almost a full day, and included the extensive testimony of the Debtor's president and the HOA's president. Sixteen documents were admitted into evidence.

24.     Debtor's president testified that his clear understanding of the settlement agreement was that Debtor would retain Tract D. This understanding is consistent with the first sentence of paragraph 2, but is inconsistent with the last sentence.

25.     The HOA's witness did not have a specific understanding of the intent of the parties on this point.

26.     On March 25, 2016, the day after the final stay relief hearing, the Court entered an order requiring the Debtor to:

    a.     Provide the Court a complete copy of the Declaration by April 1, 2016;

    b.     File any bankruptcy schedule amendments by April 1, 2016;

    c.     Convey the undisputed real property to the HOA by April 4, 2016;

---

[2] The final hearing was delayed on request of the parties so they could discuss settlement. No settlement was reached.

    d. Submit to the Court the proposed forms of the order that was to be entered by the state court judge; and

    e. File any motions to reject the settlement agreement by April 8, 2016.

  27. Through no fault of its own, Debtor did not timely comply with the order. However, Debtor amended its Schedules B and G on April 15, 2016, delivered a special warranty deed for the undisputed common areas on April 15, 2016, and submitted a complete copy of the Declaration on April 19, 2016.

  28. Debtor has not developed any land for several years. Debtor would like to use the value of Tract D to raise enough money to develop additional phases of the San Pedro Overlook community.

  29. An insider of the debtor, Campbell Management Group, is owed about $150,000, according to the Debtor's president. The debtor's schedules reflect an "unknown" obligation to Campbell Farming Corporation. Debtor should have filed an amended Schedule F reflecting the insider debt to Campbell Farming/Management.

  30. The Debtor owns a claim against Sonida, LLC, listed on the Debtor's amended Schedule B as worth $250,000.

  31. The Court held a status conference on the stay relief motion and other matters on April 22, 2016. At the status conference, the Court told Debtor's counsel in no uncertain terms that it would grant stay relief if the Debtor had not filed a motion to reject the settlement agreement by 5:00 p.m. on April 27, 2016.[3]

  32. Debtor timely filed a motion to reject the settlement agreement on April 27, 2016.

---

[3] A deadline was also given in the Court's April 22, 2016 order, entered shortly after the hearing. The order stated that it was a "firm deadline."

The Court shortened the deadline to object to the motion to reject the settlement agreement to May 10, 2016. The Court anticipates a final hearing on the motion in June, 2016, with a ruling shortly thereafter.

## II. DISCUSSION

The HOA asks for stay relief under § 362(d)(1) "for cause." The Tenth Circuit "has not set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *Dampier v. Credit Investments, Inc. et al. (In re Dampier)*, 2015 WL 6756446 at *4 (10th BAP 2015) (quoting *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)).

When the reason for stay relief is to pursue a pending state court action, "[a] list of factors identified in *In re Curtis* is often relied on by courts in their determination of whether stay relief should be granted." *Id.* (citing *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984); *In re Busch*, 294 B.R. 137, 141 (BAP 10th Cir. 2003); *In re Blair*, 534 B.R. 787, 792 (Bankr. D.N.M. 2015); *In re Sunland, Inc.*, 508 B.R. 743 (Bankr. D.N.M. 2014)). The "*Curtis*" factors are:

    1.    Whether the relief will result in a partial or complete resolution of the issues.
    2.    The lack of any connection with or interference with the bankruptcy case.
    3.    Whether the foreign proceeding involves the debtor as a fiduciary.
    4.    Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.
    5.    Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
    6.    Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.
    7.    Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.
    8.    Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).
10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties.
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.
12. The impact of the stay on the parties and the 'balance of hurt.'"

*Id.* (citing *In re Curtis*, 40 B.R. at 799-800 (citations omitted)).

The Court applies the *Curtis* factors to this dispute as follows:

| Factor | If the settlement agreement is rejected under § 365 | If the settlement agreement is not rejected |
|---|---|---|
| 1. Partial/complete resolution of issues? | Neutral. Either this court or the state court could determine the litigants' rights under the amended declaration. | Favors HOA. Under principles of comity, etc., the Court cannot second guess or overrule the state court, so the state court is the proper forum to complete the action. |
| 2. Connection or interference with bankruptcy case? | Neutral. Either this court or the state court could determine the litigants' rights under the amended declaration. | Favors HOA. Lifting the stay would only interfere with the bankruptcy case if the court were willing and able to substitute its judgment for the state court's. |
| 3. Involve debtor as fiduciary? | Neutral. The debtor is not holding Tract D as a fiduciary. | Neutral. The debtor is not holding Tract D as a fiduciary. |
| 4. Specialized tribunal? | Neutral. The state court is not a specialized tribunal. | Neutral. The state court is not a specialized tribunal. |
| 5. Insurance carrier involved? | Neutral. No insurance carrier is involved. | Neutral. No insurance carrier is involved. |
| 6. Debtor functions as a bailee? | Neutral. Debtor is not a bailee. | Neutral. Debtor is not a bailee. |
| 7. Would litigation in another forum prejudice other creditors? | Neutral. Either court could determine the parties' rights under the declaration. | Favors HOA. If the settlement agreement is not rejected, the debtor must comply with it or else go back to state court for reconsideration and/or appeal. |

| | | |
|---|---|---|
| 8. Is HOA's claim subject to equitable subordination? | Neutral. There is no equitable subordination issue. | Neutral. There is no equitable subordination issue. |
| 9. Would litigation result in avoidable judicial lien? | Neutral. There will be no judicial lien. | Neutral. There will be no judicial lien. |
| 10. Judicial economy | Favors Debtor. A court must determine the parties' rights under the declaration. Having heard a day of testimony and reviewed exhibits, this Court could address the issue promptly. | Favors HOA. The state court is the only appropriate forum in which to deal with the settlement agreement. |
| 11. Status of state court action | Neutral. Little litigation occurred in the state court action, apart from enforcing the settlement agreement. | Favors HOA. Except for a ruling on a possible motion to reconsider, the matter will be ripe for appeal once the final court order has been entered. |
| 12. Balance of the hurt | Favors Debtor. The Debtor needs a prompt resolution of the dispute over Tract D. That can be achieved in this Court. | Favors HOA. Keeping the stay in place makes no sense unless the court is wants to and can substitute its judgment for the state court's. Whether viewed in the light of comity, bad faith, *Rooker/Feldman*, abstention, or similar concepts, the general rule is that it is not appropriate for a party to relitigate an adverse state court ruling in bankruptcy court. |

On balance, the *Curtis* factors favor denying stay relief if the settlement agreement is rejected, and favor granting stay relief otherwise.

The motion for rejection of the settlement agreement is on file. Rejecting the agreement appears to be the Debtor's primary tool to effectuate their reorganization. If the automatic stay is modified and the state court judgment is entered before the Debtor has the opportunity to litigate the executory contract matter, the Debtor would lose its ability to retain Tract D, and thus its ability

to reorganize. *See, e.g., In re Meehan*, 46 B.R. 96, 102 (Bankr. E.D.N.Y. 1985) (ability to use § 365 in some circumstances may be appropriate use of bankruptcy code sufficient to avoid stay relief); *In re Collins*, 118 B.R. 35 (Bankr. D. Md. 1990) (stay relief denied pending resolution of executory contract rejection issue).

If the settlement agreement is not rejected under § 365, there are only two ways the Debtor could achieve its stated goal of retaining Tract D. First, the Debtor could get the state court to change its mind and rule that the settlement agreement does not obligate Debtor to convey Tract D. This could be done through a motion to reconsider or through a successful appeal. Alternatively, this Court could rule, through a claim objection or as part of plan confirmation, that the settlement agreement does not require Debtor to convey Tract D to the HOA.

The second alternative is not viable. Even though it appears that the settlement agreement may be ambiguous, it would be improper to substitute the Court's judgment for the state court's. *See, e.g., In re Sparklet Devices Inc.*, 154 BR 544 (Bankr. E.D. Mo. 1993) ("The great majority of courts [] have generally found that a debtor abuses the bankruptcy process when it files a bankruptcy petition in lieu of filing a supersedeas bond in an effort to avoid the consequences of an adverse state court decision."); *In re Wally Findlay Galleries (New York)*, 36 B.R. 849, (Bankr. S.D.NY. 1984) (cause for relief from stay where debtor was motivated to file for bankruptcy to relitigate issue decided in state court); *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997) (dismissed for bad faith where debtor filed petition to collaterally attack state court judgment); *In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994) ("Bad faith exists where the debtor only intended to defeat state court litigation."); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334-35 (Bankr. S.D.N.Y. 2001) (bad faith cause for relief from stay); *Matter of Young*, 76 B.R. 376 (Bankr. D. Del. 1987) (dismissal appropriate where petition filed in attempt to stop state court

order of specific performance); *In re Noco*, *Inc.*, 76 B.R. 839 (Bankr. N.D. Fla. 1987) (dismissal where debtor "clearly attempting to use the reorganization process to litigate nonbankrutpcy issues and avoid the burdens of a contract…"). *See also Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Sur. Co. (In re Laguna Assocs. Ltd. Partnership),* 30 F.3d 734, 738 (6th Cir. 1994) (listing indicia of bad faith Chapter 11 filing). If the settlement agreement cannot be rejected, the proper course would be to modify the automatic stay and allow the parties to exhaust their state court rights and remedies.

### III. CONCLUSION

This case hinges on whether Debtor can reject the settlement agreement. If it can, then Debtor may be able to retain Tract D and reorganize. Otherwise, the HOA is entitled to Tract D and Debtor's reorganization likely will fail. In the latter event, the fight over Tract D should be sent back to state court. The Court will deny the Motion, but may take up a renewed request for stay relief after ruling on the motion to reject the settlement agreement.

The Court will enter a separate order consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 29, 2016

Copies to:

James T. Burns
1801-B Rio Grande Blvd NW
Albuquerque, NM 87104

Daniel A. White
320 Gold Ave S.W., Suite 300A
Albuquerque, NM 87102