UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SPOVERLOOK, LLC,                                                                Case No. 15-13018 t11

    Debtor.

## MEMORANDUM OPINION

Before the Court is the Debtor's motion to reject a state court settlement agreement with a homeowner's association pursuant to 11 U.S.C. § 365(a).[1] The parties asked the Court to rule, in advance of the final hearing, on whether the agreement is an executory contract. Based on the case law and the uncontroverted facts, the Court finds that it is.

### I.    FACTS

The Court finds:[2]

Debtor is the developer of a 259.6 acre residential development called San Pedro Overlook, in the "East Mountains" area northeast of Albuquerque (the "Subdivision"). In 2014 a dispute arose between Debtor and the San Pedro Overlook Community Association (the "HOA") over the ownership of certain common areas in the Subdivision. The HOA filed an action against the Debtor in New Mexico's Thirteenth Judicial District Court, styled *San Pedro Overlook Community Association v. SP Overlook, LLC*, cause no. D-1329-CV-2014-01119, seeking to compel Debtor to convey the common areas to the HOA.

---

[1] Unless otherwise indicated, all statutory references are to 11 U.S.C.
[2] The findings are based on the uncontroverted facts set forth in the motion, response, and attachments thereto. The parties consented to the Court ruling on the legal issue without an evidentiary hearing.

On March 30, 2015, the HOA and the Debtor entered into a settlement agreement (the "Agreement"). Debtor agreed to pay $13,178.68 in property taxes by March 30, 2015;[3] convey the common areas to the HOA by April 30, 2015; release all claims against the HOA; and submit a stipulated order of dismissal. In exchange, the HOA agreed to pay $4,952.69 in property taxes by March 30, 2015;[4] release all claims against the Debtor upon receipt of the deed to the common areas; and submit a stipulated order of dismissal. The release provision of the Agreement states:

> Releases of Claims. The following releases of claims shall take effect upon delivery by [Debtor] of the special warranty deed for the Common Areas pursuant to Section 2 of this Agreement:
>
> a. The [HOA] and its officers and directors fully, finally, and completely releases and forever discharges [Debtor] … from any and all causes of action, claims, damages, losses, … on account of, arising from or relating to the claims asserted and the matters alleged by the [HOA] in the Lawsuit.
>
> b. [Debtor] fully, finally, and completely release[s] and forever discharges the [HOA] and its officers and directors from any and all [c]laims on account of, arising from or relating to the claims asserted and the matters alleged by the [HOA] in the Lawsuit.

Agreement, ¶ 4, p. 3 of 10.

The parties thought they had settled their differences. It turned out, however, that a dispute remained concerning a certain parcel of property ("Tract D"). The HOA contends that the settlement agreement obligates Debtor to convey Tract D as part of the common areas, while Debtor believes the settlement agreement should not be interpreted to require conveyance of Tract D. Debtor asserts it never intended Tract D to be part of the common areas, and did not understand the settlement agreement to require conveyance of Tract D to the HOA.

---

[3] The Agreement actually lists the date as March 30, *2014*. The Court assumes this is a scrivener's error, but in any event, it does not affect this ruling.
[4] Same scrivener's error.

On July 22, 2015, the HOA filed a motion in state court to enforce the settlement agreement. The state court found that there was no ambiguity in the Agreement and ordered Debtor to convey Tract D to the HOA.

On November 18, 2015, before an order was entered memorializing the state court's ruling, Debtor filed this bankruptcy case. On the petition date, Debtor had not conveyed any property to the HOA, the HOA had not released any claims against the Debtor, and neither party had taken any action to dismiss the lawsuit.[5]

## II.   DISCUSSION

A.   <u>Executory Contracts and the Countryman Test</u>.   Debtor seeks to reject the Agreement pursuant to § 365(a). That section allows the debtor in possession, "subject to the court's approval, [to] … assume or reject any executory contract or unexpired lease of the debtor."

The Bankruptcy Code does not define the term "executory contract." Most courts, including the Tenth Circuit, have adopted the "Countryman" test for determining whether a contract is executory:

> [A] contract is executory if the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973), as quoted in *In re Baird,* 567 F.3d 1207, 1210 (10th Cir. 2009).

---

[5] Pursuant to the state court's order, after the petition was filed Debtor conveyed to the HOA all of the common areas over which there is no dispute (*i.e.* all common areas except Tract D). This conveyance does not affect the Court's analysis, because executoriness is determined as of the petition date, and because the HOA contends that Debtor still is in material breach of the agreement.

The test is consistent with § 365's legislative history, which states that the term executory contracts "generally includes contracts on which performance remains due to some extent on both sides." H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 58 (1978); and U.S. Code Cong. & Admin. News 1978, pp. 5787, 5844, 6303. The proper date for determining whether a contract is executory is the petition date. *In re Penn Traffic Co.,* 524 F.3d 373, (2$^d$ Cir. 2008); *In re Sunterra Corp.,* 361 F.3d 257, 264 n. 12 (4th Cir. 2004); *In re Hawker Beechcraft, Inc.,* 486 B.R. 264, 276 (Bankr. S.D.N.Y. 2013); *In re Schupbach Investments, LLC,* 2013 WL 3102055, *3 (Bankr. D. Kan. 2013).

The Countryman test has been widely adopted, but "the myriad differences in particular contracts have made it difficult to apply." 4 Collier on Bankruptcy ¶ 507.06[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). *See also In re RoomStore, Inc.,* 473 B.R. 107, 110 (Bankr. E.D. Va. 2012) (the law of executory contracts is "hopelessly convoluted" and a "bramble filled thicket") (citations omitted). As Professor Countryman himself observed, "[a]ll contracts to a greater or less extent are executory. When they cease to be so, they cease to be contracts." Countryman, *Executory Contracts in Bankruptcy,* 57 Minn. L. Rev. at 450.

A useful supplement or corollary to the Countryman test is found in *In re Columbia Gas System, Inc.,* 50 F.3d 233 (3$^d$ Cir. 1995):

> Executory contracts in bankruptcy are best recognized as a combination of assets and liabilities to the bankruptcy estate; the performance the nonbankrupt owes the debtor constitutes an asset, and the performance the debtor owes the nonbankrupt is a liability. *See* Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law* 106–07 (1986).
> . . .
> The debtor will assume an executory contract when the package of assets and liabilities is a net asset to the estate. When it is not the debtor will (or ought to) reject the contract. 11 U.S.C. § 365(a).
> . . .
> In cases where the nonbankrupt party has fully performed, it makes no sense to talk about assumption or rejection. At that point only a liability exists for the debtor—

-4-
Case 15-13018-t11    Doc 83    Filed 06/14/16    Entered 06/14/16 14:19:00 Page 4 of 11

> a simple claim held by the nonbankrupt against the estate, Jackson, *supra,* at 106—and "[t]he estate has whatever benefit it can obtain from the other party's performance and the trustee's rejection would neither add to nor detract from the creditor's claim or the estate's liability." Countryman, *supra,* at 451. Rejection is meaningless in this context, and assumption would be of no benefit to the estate, serving only to convert the nonbankrupt's claim into a first priority expense of the estate at the expense of the other creditors. *Id.* at 452.
>
> Likewise, if the debtor has fully performed, the performance owed by the nonbankrupt is an asset of the bankruptcy estate and should be analyzed as such, not as an executory contract. Jackson, *supra,* at 107.

50 F.3d at 238-39. *See also In re Anderson,* 604 Fed. Appx. 735, 737 n. 4 (10th Cir. 2015) ("The statutory purpose of § 365" is to "to enable the trustee to assume those executory obligations which are beneficial to the estate while rejecting those which are onerous or burdensome to perform").

B. <u>Application of § 365 to the Settlement Agreement</u>. The HOA makes two primary arguments why the Agreement is not executory. First, the HOA asserts that, due to Debtor's pre-petition breach, the HOA had no remaining obligations to Debtor. Second, the HOA argues that it has no remaining "significant" or "material" obligations under the agreement. For the reasons below, the Court disagrees with both arguments.

1. <u>Prepetition Breach by the Debtor</u>. According to the HOA, Debtor's prepetition failure to convey the common areas was a material breach of the Agreement that excused the HOA from further performance. The HOA argues it therefore did not have any unperformed obligations under the Agreement on the petition date.

The HOA relies on *In re Murtishi,* 55 B.R. 564 (Bankr. N.D. Ill. 1985), to support this argument. *Murtishi* held that "rejection provisions have no applicability to a contract which has already been breached at the time debtor's petition is filed… a debtor in possession cannot resurrect [such] a contract … and thereafter attempt to reject it." 55 B.R. at 568. *Murtishi* relied on principles of state contract law, which are essentially the same in New Mexico. *See KidsKare, P.C. v. Mann,* 360 P.3d 1228, 1234 (N.M. App. 2015).

As several courts have pointed out, *Murtishi's* holding neglects the fact that § 365(b) expressly authorizes the debtor to assume or reject an "executory contract" it breached prepetition, provided the breach is cured. *In re RLR Celestial Homes, Inc.,* 108 B.R. 36, 45 (Bankr. S.D.N.Y. 1989) (rejecting *Murtishi* and noting: "to rule otherwise would contravene the express authorization for curing defaults as expressed in 11 U.S.C. § 365(b)(1)"); *In re Kemeta, LLC,* 470 B.R. 304, 324-325 (Bankr. D. Del. 2012) (*Murtishi's* reasoning "leads to the absurd result that [a] … debtor cannot assume … or reject *any* contract that it has breached pre-petition. Clearly, this cannot be the law."); *In re W. & L. Associates, Inc.,* 71 B.R. 962, 965 (Bankr. E.D. Pa. 1987) (abrogated on other grounds by *In re Walnut Associates,* 145 B.R. 489 (Bankr. E.D. Pa. 1992)) ("Most debtors have breached at least some executory contracts pre-petition, and 11 U.S.C. § 365(b) expressly provides them with an opportunity to cure … and retain their contractual rights.").

*Murtishi* also conflates breach with termination. It is well established that a debtor cannot "resurrect" a terminated contract and assume or reject it under § 365. *See In re Krystal Cadillac Oldsmobile GMC Truck, Inc.,* 142 F.3d 631, 634 (3rd Cir. 1998); *In re Indri,* 126 B.R. 443, 445 (Bankr. D.N.J. 1991); *In re Eagle Creek Subdivision, LLC,* 397 B.R. 758, 763 (Bankr. E.D.N.C. 2008). Here, neither party asserts the Agreement has been terminated, and in fact the HOA still hopes to enforce it in state court.

The Court therefore rejects *Murtishi* and adopts the majority view that "a contract is not deemed terminated [or] no longer executory simply because the debtor has defaulted or breached the contract before the commencement of a bankruptcy case." *In re RLR Celestial Homes,* 108 B.R. at 45. *See also In re Nickels Pier, LLC*, 372 B.R. 218, 222–223 (D.N.J. 2007); *In re Broadstripe, LLC,* 402 B.R. 646, 656 (Bankr. D. Del. 2009) (quoting *RLR Celestial Homes*); *In re Aegina Investments, LLC,* 2008 WL 5076979, *4 (Bankr. D.D.C.); *Bullet Jet Charter, Inc.*, 177

B.R. 593, 600 (Bankr. N.D. Ill. 1995); *In re Nemko, Inc.,* 163 B.R. 927, 939 (Bankr. E.D.N.Y. 1994).

    2.  <u>Does the HOA Still Have Significant Obligations Under the Agreement</u>?

The HOA next argues the Countryman test is not satisfied because the HOA has performed all of its significant obligations, such that any default by the HOA would not excuse Debtor's performance. According to the HOA, its only remaining obligation is to submit a stipulated order dismissing the state court lawsuit. This argument is overruled because the HOA still has one significant unperformed obligation—to release its claims against Debtor.

  The HOA's release obligation is somewhat difficult to analyze under the Countryman test for two reasons: it is a contingent obligation, and it is self-executing. If and when Debtor delivers a deed to the common areas (arguably including Tract D), then the HOA's release of claims presumably would go into effect.

  The fact that a party's performance is contingent does not mean that the contract is not executory. The majority of courts have held that "a contingent obligation, even though not yet triggered on a debtor's petition date, is nevertheless executory until expiration of the contingency." *In re RoomStore*, 473 B.R. at 112 (collecting cases); *In re Hawker Beechcraft,* 486 B.R. 264, 276 (Bankr. S.D.N.Y. 2013) ("contingent obligations are sufficient to render a contract executory"); *In re Safety-Kleen Corp.,* 410 B.R. 164, 168 (Bankr. D. Del. 2009) ("Courts have ruled that contingent obligations under a contract are sufficient to render a contract executory when the contingent obligations are essential to the contract.").[6] As one court reasoned, "[u]ntil the time

---

[6] *See also Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1046 (4th Cir.1985), *cert. denied* 475 U.S. 1057 (1986); *RAF Financial Corp. v. Resurgens Communications Group, Inc.,* 1990 WL 145603, * 3 (Bankr. D. Colo.); *In re Simon Transp. Services, Inc.,* 292 B.R. 207 (Bankr. D. Utah 2003).

has expired during which an event triggering a contingent duty may occur, the contingent obligation represents a continuing duty to stand ready to perform if the contingency occurs." *In re Richmond Metal Finishers,* 756 F.2d at 1046.

An example of a contingent obligation is an option contract. If the option is not exercised, neither party commits a breach and no performance is excused. Most courts have nevertheless construed the option as an executory obligation for purposes of § 365. 4 Collier on Bankruptcy ¶ 507.06[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010); *In re RoomStore,* 473 B.R. at 113 (collecting cases on the majority view).[7]

The self-executing nature of the release, if the contingency were ever satisfied, is the heart of the issue. The Court is persuaded that the mechanism for rendering performance of an obligation should not determine whether a contract is executory. The Court's reasoning is illustrated by the following hypothetical. The HOA and Debtor could have structured the settlement agreement in a number of ways:

1. The HOA would deliver a release of claims; within three days thereafter Debtor would deliver a deed to the common areas;
2. Debtor would deliver a deed to the common areas; within three days thereafter, the HOA would deliver a written release of claims;
3. The parties would schedule a closing, during which the HOA and Debtor would simultaneously exchange the release and the deed.

In each example, if Debtor filed for bankruptcy before either side performed, the settlement agreement would be executory.

The result should not be different here because the release can be effected without a separate document. For purposes of § 365(a), the contingent release language in the Agreement is

---

[7] *But see In re Robert L. Helms Construction & Development Co., Inc.,* 139 F.3d 702, 706 (9th Cir. 1998) (The better approach "ask[s] whether the option requires further performance from each party at the time the petition is filed.").

functionally equivalent to the second alternative outlined above. In both cases, Debtor owes substantial duties to the HOA (delivery of the common areas), and the HOA owes substantial duties to Debtor (releasing claims). Whether viewed under the analysis used by Countryman, *Baird*, or *Columbia Gas System*, the agreement is executory.

The HOA also suggests that since Debtor's performance is due first, the HOA could never breach the settlement and excuse Debtor's performance. This argument is unavailing. The timing of performance, like the mechanism of performance, should not determine whether a contract is executory. The party owing the first performance can always be excused by the anticipatory breach of the other party. *See* Restatement (Second) of Contracts § 253(2) ("Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance.").

If the HOA's only remaining obligation were to dismiss the state court action, then it might not be significant. *See In re Baird,* 567 F.3d 1207, 1211 (10th Cir. 2009) (the obligation "must be *significant,* which … if either side failed to perform them, would constitute a breach") (emphasis in original). Ministerial or ancillary obligations, such as cooperating with an insurer in the course of defense, are not material. *Id.* at 1212.[8] The Court need not rule on the materiality of the dismissal obligation because the release obligation clearly is material.

It is worth noting that in cases where the debtor owes material performance but the non-debtor may not, the wrangle over executoriness may be a tale "full of sound and fury, signifying nothing."[9] In such cases the rejection of an executory contract would result in the same damages

---

[8] *Baird* is consistent with New Mexico law, which defines "a material breach as the 'failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract.'" *KidsKare, P.C. v. Mann,* 350 P.3d 1228, 1234 (N.M. App. 2015) (quoting *Famiglietta v. Ivie-Miller Enters., Inc*., 966 P.2d 777, 782 (N.M. App. 1998)).
[9] Shakespeare, Macbeth, Act V, scene 5.

claim as non-performance of a nonexecutory contract. *See, e.g., In re Hawker Beechcraft*, 486 B.R. at 276-77 (rejection of an executory contract is the economic equivalent of the debtor's refusal to perform a non-executory contract, giving rise to the same unsecured claim).[10]

### III. CONCLUSION

When this bankruptcy case was filed, neither party to the Agreement had received the benefit of their bargain: the HOA had not gotten the common areas and the Debtor had not received the release of claims. The Agreement represented both an asset and a liability to the estate. It was executory within the meaning of § 365(a), the Countryman definition, and the Tenth Circuit and other case law on the issue.

A separate order will be entered consistent with this opinion.

*[signature]*

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 14, 2016

---

[10] In so holding, Judge Bernstein observed that the "time spent searching for executoriness can be spent more fruitfully doing almost anything else." 486 B.R. at 276. The Court does not quote this observation to chastise the parties. If anything, the Court encouraged Debtor to decide how it was going to deal with the Agreement in this bankruptcy case. At the time, it appeared that the alternatives were to go back to state court for a reconsideration or appeal of that court's ruling, or to attempt to reject the agreement in bankruptcy court. *Hawker Beechcraft* points out that there is a third alternative if the HOA has fully performed under the Agreement, namely, to determine the HOA's rights if Debtor declines to perform.

Copies to:

James T. Burns
1801-B Rio Grande Blvd NW
Albuquerque, NM 87104

Daniel A. White
320 Gold Ave S.W., Suite 300A
Albuquerque, NM 87102