UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SPOVERLOOK, LLC,                                    Case No. 15-13018 t11

    Debtor.

## OPINION

    Before the Court is Debtor's motion to reject a state court settlement agreement with a homeowner's association. The Court previously found the settlement agreement was an executory contract. The homeowner's association resists rejection, arguing that it can obtain specific performance of the agreement, rejection would improperly contravene a state court order, and the proposed rejection is in bad faith. The Court disagrees and will grant Debtor's motion.

## I.    FACTS

    The Court finds:

    Debtor is the developer of a 260-acre residential development called San Pedro Overlook (the "Subdivision") in the "East Mountains" area northeast of Albuquerque. Debtor has completed the first of three phases (Phase I), which consists of about 50 residential lots, a community center, and a gatehouse. The Subdivision was built on a large plot of open space in a manner that maintains the character of New Mexico's natural surroundings.

    The Subdivision is near another high-end development called San Pedro Creeks ("SPC"). SPC currently is the only development that can be seen from the Subdivision. There is a large open space between the Subdivision and SPC, which includes a certain parcel of undeveloped property called "Tract D." A portion of Tract D abuts a highway.

Around 2003, buyers started purchasing and building on the residential lots in Phase I. The properties were primarily marketed by Campbell Ranch Realty, an affiliate of the Debtor. Debtor advertised that the Subdivision is adjacent to 625 acres of open space. It is unclear whether that open space includes Tract D.

By 2013, Debtor had sold all of its residential lots in Phase I. Pursuant to the restrictive covenants encumbering the Subdivision,[1] Debtor was obligated to cede control of the Subdivision to the San Pedro Overlook Community Association (the "HOA") and to convey certain common areas to the HOA.

Debtor did not timely perform these obligations, possibly because it could not afford the required inspections and repairs. Debtor's development plans were severely affected by the "great recession" of 2008. Throughout 2013, the HOA demanded that Debtor perform its transition obligations.

In 2014, the HOA sued Debtor in New Mexico's Thirteenth Judicial District Court, commencing an action styled *San Pedro Overlook Community Association v. SP Overlook, LLC*, cause no. D-1329-CV-2014-01119. The suit sought to compel Debtor to, inter alia, convey the common areas to the HOA.

On March 30, 2015, the HOA and the Debtor signed a settlement agreement, under which Debtor agreed to convey the common areas to the HOA by April 30, 2015, in exchange for a mutual release of claims. Each party also agreed to pay a certain portion of property taxes and to submit a stipulated order dismissing the lawsuit.

---

[1] Declaration of Covenants, Conditions, Restrictions, and Easement for San Pedro Overlook, admitted as Exhibit 21 (the "Declaration").

Debtor and the HOA thought they had settled their differences. It turned out, however, that a dispute remained concerning Tract D. Paragraph 2 of the agreement defines "common areas" as the areas identified in the Declaration. It is not clear Tract D comes within this definition. Paragraph 2 goes on to state, however, that "the parties agree that the real property described in Exhibit A to this Agreement constitutes the common areas to be conveyed by [Debtor] in accordance with this [paragraph] 2…." The description in Exhibit A includes Tract D.

Debtor maintains that Tract D is not and has never been part of the common areas, and that Debtor never intended to convey Tract D to the HOA. Accordingly, Debtor argues the settlement agreement is ambiguous, and/or that a mistake was made. The HOA, in contrast, argues that the agreement unambiguously obligates Debtor to convey Tract D to the HOA.

The disposition of Tract D is important to the parties. Debtor wants to realize the value of Tract D so it can begin development on Phases II and III of the Subdivision. The HOA opposes any development of Tract D, and contends the Debtor represented that Tract D would remain undeveloped open space.

On July 22, 2015, the HOA filed a motion in state court to enforce the settlement agreement. The court held a short hearing on October 27, 2015. No witnesses testified, nor were any exhibits introduced into evidence. The hearing took about 33 minutes. The state court ruled for the HOA, stating:

> I have reviewed this at some length, and I find that the settlement agreement is unambiguous, and should be … enforced specifically by the Court. So the Court will decree that the defendant specifically perform and sign the deed. The issue concerning the tract -- whichever one. . . . I think the special warranty deed form is appropriate, in light of the fact that it calls out any and all easements of record. So the Court will order that defendant perform as indicated by the Court.

The parties agreed to submit an order memorializing the ruling within seven days. Counsel for the HOA prepared a form of order, but Debtor's counsel did not respond. On November 18,

2015, before the order was entered, Debtor filed this bankruptcy case. On the petition date, Debtor had not conveyed any property to the HOA, the HOA had not released any claims against the Debtor, and neither party had taken action to dismiss the lawsuit. At this Court's insistence, Debtor has since conveyed to the HOA all of the undisputed common areas, leaving only the disputed Tract D.

Debtor's interest in Tract D is its main asset. Debtor scheduled Tract D at $300,000; a lawsuit against Sonida, LLC at $250,000; and a potential malpractice suit against the lawyers who drafted the settlement agreement at $250,000. The value of the lawsuits is highly speculative. Sonida, LLC dissolved, and the malpractice suit may depend on, inter alia, the ultimate disposition of Tract D.

Debtor is not operating currently. Rejecting the settlement agreement and pursuing Tract D may be Debtor's main chance to reorganize.

By a memorandum opinion and order entered June 14, 2016, this Court determined the settlement agreement was an executory contract.

## II. DISCUSSION

A. <u>Rejecting Executory Contracts</u>. A debtor-in-possession may assume or reject executory contracts, subject to bankruptcy court approval. 11 U.S.C. § 365(a).[2] The business judgment test determines whether the Court should approve a proposed assumption or rejection. *In re Tilco, Inc.*, 558 F.2d 1369, 1373 (10th Cir. 1977); *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513 (1984) (business judgment test applies to authorize rejection of an ordinary executory contract); *In re Western Wood Products, Inc.,* 2013 WL 1386285, *21 (Bankr. D.N.M.) (citing *Tilco* and applying the business judgment test).

---

[2] All statutory references are to 11 U.S.C.

-4-

The test is not particularly strict. *In re Mile Hi Metal Systems, Inc.,* 899 F.2d 887, 896 n. 13 (10th Cir. 1990) ("We do not consider the 'business judgment test' to be a strict standard to meet.") (quoting *In re W. & L. Assoc., Inc.*, 71 B.R. 962, 966 (Bankr. E.D. Pa. 1987)). Deference is given to the debtor's decision, provided it demonstrates "that rejection of the contract will be likely to benefit the estate." *Id. See also Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985) (articulating a deferential "benefit to the estate" standard); *In re: Genco Shipping & Trading Limited,* 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014) ("A court should defer to a debtor's decision that rejection of a contract would be advantageous."); *In re Malden Mills Industries, Inc.,* 303 B.R. 688, 701 (1st Cir. BAP 2004) ("A court will generally not second-guess a debtor's business judgment regarding whether the assumption or rejection of a contract will benefit the debtor's estate.").

An alternative articulation of the test is that the Court will approve a proposed assumption or rejection unless it is manifestly unreasonable or derives from bad faith, whim, or caprice. *Western Wood,* 2013 WL 1386285, at *21 (Court will not interfere unless the decision is "so manifestly unreasonable that it could not be based on sound business judgment") (quoting *Lubrizol Enterprises, Inc.,* 756 F.2d at 1047); *In re Sabine Oil & Gas Corp.,* 550 B.R. 59, 75 (Bankr. S.D.N.Y. 2016) (court will defer to debtor's decision to reject unless it is "the product of bad faith, whim, or caprice"); *In re Cook,* 2012 WL 5408905, *11 (Bankr. D.N.M. 2012) (same).

B.  <u>Specific Performance</u>.  The HOA argues that rejection of the Settlement Agreement would be futile because the HOA would be entitled to specific performance in the event of a breach. The Court disagrees.

Rejection of an executory contract constitutes a breach of the contract as of the date immediately before the petition date. § 365(g)(1); *In re Siggins,* 2014 WL 1796685, at *5 (Bankr.

-5-
Case 15-13018-t11    Doc 98    Filed 10/07/16    Entered 10/07/16 14:45:56 Page 5 of 11

D.N.M. 2014). The breach gives rise to a claim. § 502(g)(1). The non-debtor party's right to specific performance after rejection depends on whether the specific performance obligation qualifies as a "claim" that can be monetized and discharged.

A claim is defined to include a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment…." § 101(5)(B). As the Supreme Court noted:

> Section [101(5)(B)] ... is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11.

*Ohio v. Kovacs,* 469 U.S. 274, 280 (1985) (quoting the sponsors of the 1978 Bankruptcy Reform Act, 124 Cong. Rec. 32393 (1978)).[3]

In New Mexico cases involving real estate, specific performance is an alternative to the legal remedy of money damages. *See Jones v. Lee,* 971 P.2d 858, 862 (N.M. App. 1999) ("Where a party elects to sue for damages resulting from a breach of land sale contract, the burden is on that party to present competent evidence to support such claim for damages"); *Beaver v. Brumlow,* 231 P.3d 628, 630 (N.M. App. 2010) ("The trial court allowed Buyers a choice of remedy: money damages for the prima facie tort or specific performance of the contract. Buyers chose specific performance."); *Buckingham v. Ryan,* 953 P.2d 33, 38 (N.M. App. 1997) (discussing the election of remedies on a land sale contract). Thus, a state law right to seek specific performance falls squarely within § 101(5)(B)'s definition of a claim.

---

[3] Specific performance is an equitable remedy. *Kokoricha v. Estate of Keiner,* 236 P.3d 41, 48 (N.M. App. 2010); *Westar Energy, Inc. v. Lake,* 552 F.3d 1215, 1222 (10th Cir. 2009).

Consistent with the foregoing, the strong majority of courts addressing the issue have held that parties like the HOA can be forced to accept claims for money damages in bankruptcy. *See Route 21 Associates v. MHC, Inc.,* 486 B.R. 75, 85-87 (S.D.N.Y. 2012) (purchaser was not entitled to specific performance post-rejection because its claim could be monetized under § 101(5)(B)); *In re Young*, 214 B.R. 905, 912 (Bankr. D. Idaho 1997) (both specific performance and monetary damages were available under Idaho law for breach of a contract to sell real property, so the buyer had a claim under § 101(5)); *In re A.J. Lane & Co., Inc.*, 115 B.R. 738, 742 (Bankr. D. Mass. 1990) (debtor/seller's obligation under a real estate contract gives rise to a dischargeable claim if the buyer has the right to either damages or specific performance); *In re Kilpatrick,* 160 B.R. 560, 564-66 (Bankr. E.D. Mich. 1993); *In re Ground Round, Inc.,* 335 B.R. 253, 261 (1st Cir. BAP 2005), *aff'd,* 482 F.3d 15 (1st Cir. 2007) (an equitable remedy will be deemed a claim when the payment of monetary damages is an alternative); *In re Nickels Midway Pier, LLC,* 341 B.R. 486, 500 (Bankr. D.N.J. 2006); *In re Aslan*, 65 B.R. 826, 830-31 (Bankr. D. Cal. 1986), *rev'd in part*

*on other grounds*, 909 F.2d 367 (9th Cir.1993) (specific performance not available post-rejection based on legislative history of § 101(5)).[4]

The majority rule is consistent with the statutory construction maxim *expression unius est exclusio alterius*. Section 365 identifies two instances in which the non-debtor may demand specific performance following contract rejection: § 365(i) (a non-debtor already in possession of real property is entitle to complete a pending sale), and § 365(n) (rejection cannot terminate the intellectual property rights of a technology licensee). These sections imply that Congress considered the issue of specific performance and limited the remedy as specified. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts*, Canon 10, p. 107 (2014) (the expression of one thing implies the exclusion of others).

As the HOA points out, several courts have ruled the other way. *See, e.g., In re Walnut Associates,* 145 B.R. 489, 494 (Bankr. E.D. Penn. 1992) ("if state law … authorize[s] specific performance under the rejected executory contract … the non-debtor should be able to enforce the

---

[4] *See also* 3 Collier on Bankruptcy ¶ 365.10[1], p. 365-79 (16th ed. 2016) ("rejection deprives the nondebtor party of a specific performance remedy that it might otherwise have under applicable nonbankruptcy law"); *Lubrizol Enterprises*, 756 F.2d at 1048 (the purpose of § 365(g) is to limit remedies to money damages); *In re Scott Desert Shadows, LLC,* 2006 WL 1775828, *4 (Bankr. D. Ariz. 2006) (specific performance is no longer available once a contract is rejected); *Moglia v. Pac. Employers Ins. Co. of North America*, 547 F.3d 835, 837 (7th Cir. 2008) (noting in dicta that rejection does not avoid the debtor's obligations but replaces specific performance with damages); *In re Ducane Gas Grills, Inc.,* 320 B.R. 341, 351 (Bankr. D.S.C. 2004) ("Plaintiffs are not entitled to the return of the Chuck Wagon as a specific performance remedy for Debtor's rejection of executory contracts … and are limited to claiming a prepetition unsecured claim for damages from Debtor's bankruptcy estate pursuant to § 502(g)"); *In re Roman Crest Fruit, Inc*., 35 Bankr. 939, 946 (Bankr. S.D.N.Y. 1983) ("it would make no sense to order the debtor to specifically perform a contract that can be avoided or rejected"); *In re Sun Belt Elec. Constructors, Inc.,* 56 B.R. 686 (Bankr. N.D. Ga. 1986) (specific performance is not an appropriate remedy following rejection); *In re Fleishman*, 138 B.R. 641, 648 (Bankr. D. Mass. 1992) (same); *In re Rega Properties, Ltd.,* 894 F.2d 1136, 1140 (9th Cir. 1990) (allowing the non-debtor to enforce the contract as written following rejection would defeat the purpose of § 365, which is to relieve the debtor of burdensome obligations).

contract against the [d]ebtor"); *In re West Chestnut Realty of Haverford, Inc.,* 177 B.R. 501, 506 (E.D. Penn. 1995) (same). The Court is unconvinced by these cases, which do not acknowledge § 101(5)(B) or the impact of the bankruptcy discharge on a creditor's ordinary state law equitable remedies.

Thus, if the settlement agreement is rejected and Debtor confirms a plan of reorganization, the HOA would not be able to enforce its state law specific performance rights, but would have to settle for a claim for money damages. At this stage, the Court cannot say that rejection would be futile.

C. Effect of the State Court Order.

The HOA next argues that the state court has already ordered specific performance, which cannot be defeated by Debtor's rejection of the settlement agreement. The Court agrees that, had the settlement agreement been reduced to a final specific performance judgment, it would no longer be an executory contract subject to rejection. *See, e.g. In re Bassett,* 74 B.R. 361, 363 (Bankr. D. Colo. 1987) (land-sale contract buttressed by a prepetition order of specific performance is not an executory contract that can be rejected under § 365); *In re Pribonic*, 70 B.R. 596 (Bankr. W.D. Pa. 1987) (contract was no longer executory after entry of state law specific performance decree, and in any event by electing its remedy, non-debtor could not have a "claim" that could be monetized); *In re Sundial Asphalt Co., Inc.*, 147 B.R. 72, 80 (E.D.N.Y. 1992) ("[a] contract for the sale of land ceases to be executory, or rejectable in bankruptcy, at the instant a decree of specific performance is issued."); *Roxse Homes, Inc. v. Roxse Homes Ltd. Partnership,* 83 B.R. 185, 187 (D. Mass. 1988) (same).

The Court has already ruled, however, that the settlement agreement is an executory contract, not a final judgment. While there is a state court order, it did not result from the full

-9-

litigation of a land sale contact. There was no trial, virtually no evidence, and no election of remedies by the HOA. Instead, the state court conducted a short hearing consisting of oral argument and granted the HOA's motion to enforce the settlement agreement.[5] The issue of specific performance was not litigated or finally determined, so the settlement agreement was not converted into a final, non-executory judgment. For the same reasons, the Court need not deny Debtor's motion based on comity, the Rooker-Feldman doctrine, or other preclusion theories.

    D.    <u>Bad Faith</u>.

Finally, the HOA asserts that Debtor is acting in bad faith by filing the bankruptcy case for the sole purpose of rejecting the settlement agreement. The Court disagrees. In general, filing a bankruptcy case to reject a lease or executory contract is not bad faith. *See, e.g., In re Balboa Street Beach Club, Inc.,* 319 B.R. 736, 740 (Bankr. S.D. Fla. 2005) (collecting cases and noting: "there is no such thing as 'bad faith' in bringing a bankruptcy case solely for the purposes of rejecting an overly burdensome executory contract"); *In re Chameleon Systems, Inc.,* 306 B.R. 666, 696 (Bankr. N.D. Cal. 2004) ("rejection and the capping of a landlord's claim is not per se bad faith").[6] The power to reject burdensome leases or contracts under was granted to debtors by Congress. *Law v. Siegel,* 134 S. Ct. 1188 (2014), teaches that bankruptcy courts should not alter the remedies specified in the Code to correct perceived unfairness. The Court therefore is unwilling to characterize Debtor's use of § 365 as bad faith.

Furthermore, if filing a bankruptcy petition after entry of an adverse state court ruling automatically constitutes bad faith, many cases would have to be dismissed. Consumer debtors

---

[5] For purposes of this opinion, the Court treats the state court's oral order the same as if it had been memorialized in writing.

[6] *But see, e.g., In re Silberkraus,* 253 B.R. 890, 906 (Bankr. C.D. Cal. 2000) ("filing bankruptcy with the sole purpose of trying to reject an executory contract or lease is bad faith, and the rejection will be precluded").

-10-
Case 15-13018-t11    Doc 98    Filed 10/07/16    Entered 10/07/16 14:45:56 Page 10 of 11

regularly file bankruptcy petitions after the entry of foreclosure judgments. Retailers and restaurateurs file petitions after litigation with vendors, landlords, franchisors, etc. By approving rejection, the Court is not disturbing or collaterally attacking a pre-petition state court judgment, nor is it modifying any of the HOA's rights that are independent of the rejected contract. For example, the HOA may still pursue Tract D if it has (as asserted) a right to the tract under the Declaration. The Court concludes Debtor is not acting in bad faith.

### III. CONCLUSION

Debtor has exercised reasonable business judgment in electing to reject the settlement agreement, which is an executory contract. Upon rejection and subsequent plan confirmation, the HOA could be forced to settle for a money damages claim rather than specific performance. Debtor's efforts in this case may or may not succeed, ultimately, but are not taken in bad faith. The Court will approve Debtor's rejection of the settlement agreement. A separate order will be entered consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 7, 2016

Copies to:

James T. Burns
1801-B Rio Grande Blvd NW
Albuquerque, NM 87104

Daniel A. White
320 Gold Ave S.W., Suite 300A
Albuquerque, NM 87102

-11-
Case 15-13018-t11    Doc 98    Filed 10/07/16    Entered 10/07/16 14:45:56 Page 11 of 11